Next case is Angel Perez Jr. v. Borough of Johnsonburg and David Cuneo. Ms. Vanderwood? Correct. Vanderwood, thank you. What? Yes. Sorry. Good morning, Your Honors. May it please the Court, Carol Vanderwood for Appellant David Cuneo in this matter. I preserve three minutes for rebuttal. I see that, so thank you very much. The issue in this appeal is narrow. It's a qualified immunity appeal and this Court has jurisdiction because the issues giving rise to this appeal don't have any disputed facts on the record. In fact, if you look at the motion for summary judgment... Well, let me just make sure I understand what we're dealing with because there are all kinds of disputed facts about the altercation. When you say there are no issues of disputed fact, you're talking about the initial attempt at a seizure. Correct. The initial interactions between Officer Cuneo and Mr. Perez. Okay. In fact, the differences begin with the disagreement about how quickly Mr. Perez moved away from Officer Cuneo. Correct. So summary claims centering on the use of the taser and the baton. Summary judgment was denied on the issue of the shooting that eventually culminated the interaction and that's not being challenged on appeal because there are issues of fact as to exactly what occurred in the context of that shooting. All right. So why are we here then if the case is going forward? We are here with respect to only one of the claims and the issue here as to that claim involves qualified immunity with respect to the initial interactions between Officer Cuneo and Mr. Perez on the early morning hours of November 21st, 2017. Which claim is it? An unlawful seizure claim. The district court held that the initial interactions between Mr. Perez and Officer Cuneo constituted what amounted to an arrest. He used the term arrest the district court judge versus an unlawful seizure, sort of interchangeably throughout, but neither is appropriate. The initial interactions were not... That's still alive and it's back in the district court. That is alive and that's the issue being challenged with respect to the initial interactions between... Is that the issue being challenged? Correct. Or is it the injury violation of the Fourth Amendment for the injury as a result of excessive force? No, if you look at the summary judgment pleadings, if you look at the argument at the hearing on the summary judgment motion, the center of the dispute before this court, the issue that has been appealed, is whether or not Officer Cuneo initially having a conversation with Mr. Perez when he first encountered him walking past his patrol car in the evening of our early morning hours of November 21st. You still have a claim which is alive in the district court? There is still a claim with respect to the shooting that is alive in the district court. The issue is whether in this appeal we remove from the issues for trial whether or not that initial interaction was problematic. Right, so really what this appeal will do is will chart the parameters for the trial. Correct. And you want the trial parameters to include the use of force, you know, what happened during what I call the altercation. Correct. The center on the altercation and the shooting in particular. All right, but all right, in order to determine the legitimacy of the initial stop, do we have to ask the question whether Officer Cuneo had probable cause to make an arrest? No. Why not? Because what has that issue here and what we cited in our brief and what the district court didn't seem to focus on is that an investigatory stop, let's say, or detention, which is at best what this amounts to, is permissible under settled precedent of the United States Supreme Court. And that's the 1985 Hensley decision, which we discussed, where a neighboring police department, much as in this case, issued a flyer, I think the Supreme Court called it, with respect to a suspect wanted for a past crime. And it asked neighboring police departments to detain and hold the suspect. That's exactly what happened here with respect to a past crime. I think you're on the path to continue to confuse this. First of all, tell me when the seizure occurred. When do you allege he was seized? Well, I think that's what's confusing about this particular case. The seizure, according to plaintiff, and I think that the district court looked at... When do you argue the seizure occurred? If this court were to consider a seizure having occurred, it would be upon the initial interactions between Officer Perez and Cuneo. That's not the only time. I mean, the seizure could have occurred when the tasing happened. And what do you mean when you say upon the initial interactions? Well, when Perez walked over to Officer Cuneo's marked police vehicle, they knew each other. They had a history. He's known in the community as... That's a seizure? Our position is that's not a seizure. Okay. As was better framed by Judge Hardiman, if there was a seizure, I'm not asking you to agree that there was a seizure, but if there was a seizure, when was the seizure? My personal opinion is that it never really rose to the level of an unlawful seizure at any point. We didn't say unlawful. We're saying seizure. Seizure. When was the seizure? When was he seized? At best. Let's pretend this case was typical, because there's nothing typical. Correct. These were typical, and it fell into the line of Hodari D cases, and the officer had reasonable articulable suspicion that crime was afoot, and he wanted to engage Perez to investigate a terrorist stop, say, and Perez took off. The Hodari D line of cases says that Cuneo can chase him. Yes. Capture him. Correct. Right? And use whatever force is required if it's a fleeing felony situation. Correct. Okay. But here we don't have that. This is not within the Hodari D line of cases, because instead you've got what amounts to sort of an administrative arrest. You've got a neighboring police department, St. Mary's, saying that we have a DNA warrant for this guy. Hold him. Right? That is what the police logs indicated, yes. Right. And if Cuneo had looked when he came on duty that evening, and he had seen it was a DNA warrant, he wouldn't have mistakenly believed it to be a body warrant, which is what he testified to. Correct? Correct. Okay. So the question then becomes, did the officer have the right when Perez told him, I'm not coming with you. He said, I'm not coming with you. I think he said, I'm going home. They already have my DNA. Correct? Mm-hmm. So when he said, I'm going home, they already have my DNA. Did Cuneo have the right to pursue him? Yes. That's not disputed. Why? Well, preliminarily, that's not a disputed issue. Page 8.388 in the record, at the hearing on oral argument, plaintiff's counsel agreed at that point, he was not free to flee. So that is not disputed. Under Hensley. Well, Hensley wasn't even discussed at that point. The district judge just asked at oral argument. He had the right to make that inquiry under- Correct. That's correct, Judge. Hensley says that not only do you have the right to investigate a crime, an ongoing crime, but Hensley articulates the right for a police officer to stop someone based on reasonable suspicion for a crime that's already been committed. Correct. And the reasonable suspicion is not with respect to the officers engaging with the suspect. It's respect to the police department that issued the bulletin. If the officer has some basis, the officer under Fourth Amendment jurisprudence has to have some That's fine. That's correct. That's in the first category of even less than an investigatory question. But when he says, you know, there's a DNA worn out for you, I want you to come, you need to come with me. So that would be the- Some basis to make that. Arguably, yes. But I think Hensley, I think Hensley leaves that open because in Hensley. Yes. I'm not trying to cross you up here. I'm actually trying to help you. I know where you're going. I'm trying to help you frame what you're arguing here. But I think the real question comes down to once that right is established, I ask you when the seizure occurred. If the seizure occurred, let me ask you, what was it when Officer Cuneo tased Perez? What was that? Was it a seizure? No, I think at that point, he was maintaining the status quo. He had unlawfully fled at that point. He did not have a right to flee. So now we're moving from the initial interactions, which is the narrow scope of this appeal, which under Hensley, he was permitted to engage Mr. Perez at that point, whether a mistaken belief or not, because recall in Hensley, the officers there also did not know whether a warrant had issued or not. And what the Supreme Court said in that case, which I think applies here, is it didn't matter in Hensley that the bulletin or flyer in that case said detain and hold. And they held that it didn't matter that those officers intended to detain and hold them. And the court said, we're not looking at whether or not that would have been proper if he had detained and held him. All we're saying, the Supreme Court, in the context of Hensley, is they were permitted to stop and engage with the suspect. Well, I think that's when we cross into the Hodarity D context. Exactly right. It seems to me that the reasonable suspicion that he may have been a courter rose to the level of probable cause, that he then had probable cause, as probable cause is known, to use force and effectuate a de facto arrest. And ultimately, there was an actual arrest based on what happened following the initial interaction. Correct. Correct. So I think the Hodarity D line of cases, it talks about when, okay, the question, when is there a seizure? And I think the detention itself, if it's construed as an investigatory detention under Hensley, that would arguably, I think, qualify as a seizure. But at the point when Officer Cuneo said, I'm sorry, Perez, but St. Mary's wants you. They have a warrant for you. I need to bring you in and turn you over to St. Mary's. At that point, that's a show of authority. At that point, Officer Cuneo is saying, I need to take you in. Okay. And based on this fact, is the tasing, in your opinion, a lawful arrest? The tasing was not unlawful. It's not a lawful arrest? Not unlawful. I don't even think it qualifies as an arrest. Was it a lawful arrest? Yes. If it's going to be construed as anything, it would be a lawful arrest or lawful detention. The argument would be there's no Fourth Amendment violation. Correct. And if you're correct, then your argument is that he's entitled to qualify. Correct. Within the narrow scope of the time period that we're talking about, which is from the initial interactions through the time when he... Let's go to the next two. Let's suppose we found that it was not lawful. The tasing or the initial? The arrest. Okay. Let's just agree on the fact that there was an arrest. Okay. We find that it's not lawful. Can you survive on the other prong of qualified immunity that arresting somebody under those circumstances unlawfully was not a violation that was clearly a step? Well, I mean, I think so, yes. Because when you look at Hensley and you look at Hodjari D combined, and you look at the unique circumstances which sort of escalated in this particular case, which was Mr. Perez not submitting to the show of authority. I mean, he never actually submitted to the show of authority. So our position is that this is nothing more than an attempted arrest until you get to the point where we have tasing and everything else going on. So I think given the unique circumstances of this case, given that Officer Cuneo actually knew that there was a DNA search warrant out, you need a probable cause warrant for a DNA search. You need probable cause for such a search warrant. He also knew that there had been a preliminary DNA match at the scene. We point that out in our brief. So I think the way that these events escalated, the line of Supreme Court precedent involving when you have an arrest, when you don't have an arrest, when you can engage in force, and when you can't. I do... Once Perez submits to the show of authority and runs away, does he need probable cause or does that running away create its own independent justification? I think that creates its own, and that's when I was citing at the hearing, A.388 in the record, where the parties didn't disagree as to that point. He should not have fled. At that point, you start, I think, a new stream of analysis. You're moving beyond the initial interactions. You're moving beyond the narrow scope of this appeal, and we're looking at a different trigger for the next series of events that occur during the process. You said this was an attempted arrest or attempted seizure, and you said that in your reply brief, but was that argued in your opening brief? And more importantly, was that argued in the district court? We did argue that at a minimum, this was a permissible stop, and I think at the hearing on the summary judgment motion, yes, it was presented that all Officer Crunio did here was attempt to bring him into custody. He never actually got to the point where he did because Mr. Perez fled, which then led to the next series of events, and both parties agreed that the argument on the summary judgment that he had no right to flee at that particular point. Didn't really have a right to bring him into custody, did he? Or did that DNA warrant allow—it's not an arrest warrant. No, but I think that's— So he was mistaken on that. Correct. What is it? A DNA search warrant? This gets thrown around, this term, a DNA warrant, and you also have thrown around this body warrant. What is this DNA warrant? I think it was basically for a swab to do a DNA match for the preliminary match at the scene. What authority gives you the right to say to neighboring police departments, we have quoted DNA warrant? Well, I would say that the authority, or at least Officer Crunio's reasonable belief in his authority to act on that would be the long line of precedent following Hensley, which is a police department. In that a warrant even existed. St. Mary's put out a bad flyer. They said to their neighboring police departments, look, we got a DNA warrant for this guy Perez because we want to take his DNA. But they hadn't gone to a magistrate to get any documents. Then reliance would not be permissible. So they did not advertise their interest in Perez in good faith. As a result, didn't Hensley talk a little bit that neighboring police officers' reliance had to be objectively reasonable? Correct. Well, what Hensley looked at was not whether or not the officer—yes, so I will say yes to that. But the focus also is the fact that those officers in that particular case had a sufficiently reasonable basis to send out that flyer. And I think that same rationale applies here. They had that basis because they had a DNA search warrant. They had a preliminary DNA match, and they were asked to hold them. Well, this is starting to sound like the Supreme Court. Herring is the case where Mr. Herring goes to the local impound lot to retrieve his truck, and he's known to police. And one of the officers asks the clerk to see if there are any locks in the county for Herring. And they look at their computer, and they say no. And then the officer says, well, check neighboring counties. And they check a neighboring county, and they say, yes, the next-door county has a warrant for Herring. So they stop him as he's pulling out in his truck, and they find contraband in the vehicle. The Supreme Court, over a dissent written by Justice Ginsburg, said that that honest mistake, that clerical error, would not result in suppression on a Fourth Amendment violation because it was an honest mistake. Is your argument similar to that, that here you're saying that your client made an honest mistake regarding what he was entitled to do with Mr. Perez, and that honest mistake cloaks him with qualified immunity? That was one of the arguments that we made in our brief, yes. But I think the court here is maybe struggling a little bit with the unique circumstances within which all of these issues are related. And I think that's a point for another. What occurs to me is the fact that the record does not clearly establish what kind of lawful authority either St. Mary's articulated or Johnsonburg followed. Is that a factual question that would preclude us from taking jurisdiction of this appeal? No, I don't think so, no, because I think it's actually fairly clear that Hensley allowed for the initial interaction to occur. I think it's also, based on settled precedent on the undisputed facts, that to the extent that Officer Cuneo attempted to arrest or tried to exercise control or engage in a more significant seizure than permitted under Hensley, at that point when he said, I needed to take you in, Mr. Perez fled. Under Hodari D, he never acquiesced to an arrest at that point. So all you have is a permissible detention during that limited timeframe under Hensley. And in Hensley, again- But you're saying so long as you thought he was doing the right thing, his actions are proper enough that there's no Fourth Amendment violation? I think Supreme Court precedent supports that he was permitted to engage, regardless of whether he thought he was or not. I think- So even if there was no DNA warrant, you're saying Hensley, if there was simply a notation in the Johnsonburg police files that said St. Mary's is looking for Perez, he is a suspect in a burglary, and there's a DNA match. If it was just a notation that said that, your argument is that Hensley allows for a Johnsonburg officer like Cuneo to arrest Perez and bring him to St. Mary's? Well, Hensley didn't reach the issue of whether or not compliance with the request in the bulletin to hold and detain would be deemed sufficient. What Hensley held, Hensley acknowledged that the a past crime based on what an informant had relayed to another police department. Now, the Supreme Court in Hensley didn't go so far as to say, well, if those police officers had in fact detained and held the suspect, well, that's not a Fourth Amendment seizure. They didn't reach that question. And they said they don't have to. And I think that's the exact issue presented with this court. You don't have to reach that question. You could stop that person to investigate. But here, and the reason here that is enough under your theory of the case is because the stop and engage him didn't get very far because Perez took off. Correct. Then you're saying this is like HODAR-ID then, because once the show of authority was valid under Hensley, Perez was obliged to submit and the lack of submission is just like HODAR-ID. Correct. Then we don't reach the point. Our position is similar to the end point in Hensley, which is that the court didn't consider and wasn't worried about whether or not the issue of what the officers intended to do, whether they intended to detain and hold them, the suspect, to take them into custody pursuant to the bulletin, which was, that's what was requested, detain and hold the suspect. The court in Hensley held, we're not worried about that. We're not going to address whether that rises to a Fourth Amendment violation or whether it might. All we're looking at here is what actually happened and what actually happened was permissible. If we write an opinion that says the initial stop was fine and Perez shouldn't have taken off, why isn't that an advisory opinion? Does it eliminate a count of the complaint? It eliminates the unlawful seizure count, yes, with respect to the initial stop. Which number count is that again? The complaint's not very precise in how it's laid out, but they do allege an unlawful seizure and that issue was briefed at summary judgment, was opposed by the plaintiffs at summary judgment, and it was argued at length at the hearing on oral argument for summary judgment. But if we write a complaint saying there was no unlawful seizure at the initial stop, that doesn't mean anything about there not being an unlawful, a potential unlawful seizure later involving either the tasing or the shooting. Well, you said the tasing's already been thrown out, I guess. Well, no, because we have... It's all about the shooting, that's all that's left of the case. We have a fleeing suspect at that point, and I think as Judge Fisher was saying, then your circumstances have changed. You're no longer dealing with an initial... You're no longer dealing with someone fleeing who has a right to flee. That's what the whole case comes down to. Well... Because in a typical citizen encounter, when an officer says, I want to talk to you, the citizen is free to say no thanks. Yeah, but in a Hensley encounter, you don't have a right to flee. Right? I'm going to use this by talking about that DNA warrant. Because if you go back to the... The District Court found that Cuneo improperly or unreasonably seized Perez because the DNA warrant precluded bringing somebody, serving it between the hours of 10 p.m. That was part of the record. That was part of the record and the District Court's rationale. So that's his document out there. Correct. Cuneo operating that night, it wasn't operating per se under that document, or he wouldn't have done anything at 1 a.m. in the morning. Number one, he never saw that document. I don't... So that was his... Okay. But I don't think that's... It gets us back to the question of the seizure, the reasonable suspicion converting perhaps the probable cause, and whether or not that arrest of Perez at that time by Cuneo is lawful. I don't think the subsequent arrest following the altercation is challenged at all. What the District Court seemed to believe, and I'll pull the site when I sit down, is that the initial conversation, just that initial interaction, which we say is at a minimum permissible under Hensley, that that amounted to an arrest. And we pointed out that putting aside the DNA search warrant is one thing, but there was more than just the DNA search warrant and what was in the daily logs because the record, and it wasn't disputed, showed that Officer Cuneo also knew that at least a week prior that he was wanted for this crime and that they were in the process of getting a warrant. And again, it's analogous to Hensley insofar as it was just asked, hold this person wanted for past crime and turn him over to us. And that's what he did consistent with Hensley until he fled, at which point we have a new set of... Thank you. We'll hear you on rebuttal. Let's hear from Mr. Keller. Good morning. It may please the court. Benjamin Kelly on behalf of the appellee, Angel Perez. I first want to start off by saying that we should not be here right now. There is no appellate jurisdiction for this court to entertain this appeal. Because you think there are disputed issues of fact. Correct, Your Honor. What are they? So it's important to first look at what the claims on appeal are for the appellant. So appellant is saying that the initial stop and interactions were not an unlawful seizure. And then two... Well, I asked you not to characterize their arguments. I asked you, what are the disputed issues of fact? Can you tell us what the disputed issues of fact are? So the issues of fact are whether the actions taken by Officer Cuneo rise to the level of being objectively reasonable. That's a legal question. Correct. I'm asking you, what are the disputed... So when we look at disputed issues of fact in qualified immunity cases, typically, I'll give you some examples and see if it's helpful to your argument. Some examples would include things like the plaintiff claims that the officer struck him with his baton. The officer claims that... Unprovoked, that's the plaintiff's claim. The officer claims that he was punched in the face by the plaintiff, and only after being punched in the face, struck the plaintiff with the baton. Those are the sort of disputed issues of fact that often prevent us from hearing a qualified immunity argument on appeal. So what are the disputed issues of fact in this case that deprive us of jurisdiction? Yes, Your Honor. Thank you. So the primary issues of fact are more related to the altercation once the encounter occurs, and those center on who punched who, how many punches... So Ms. Vanderwood got... And she's conceded that point, and that's why you're going to get a trial on those matters. But when she conceded that point, she indicated that all she's arguing on this appeal is the legitimacy of the initial attempted seizure or attempted arrest. What are the disputed issues of material fact surrounding that? So, Your Honor, in all honesty, there's really no issues of fact with respect to that. All right, good. We have jurisdiction, so tell us why her legal arguments about the legal implications of the attempted seizure are incorrect. So it's important to look at what the actual seizure is and what the district court said that the seizure was. Well, what do you say the seizure was? So, and I'll agree with the district court that the seizure was when Officer Cuneo approached Perez and said, hey, I have this DNA warrant. I'm going to take you... Why is that a seizure? Because at that time, it's a show of authority. He's not free to leave. So, and we agree with that. What counsel is saying, what came up in oral argument, that once he makes that showing of authority, even though we dispute that he had any basis to make that showing of authority, but once he does say that to Perez, we agree that Perez was not free to leave at that point. But that's not an issue on this appeal. Why doesn't Hensley set aside the whole complexity of the DNA warrant for a minute? And I'll let you address that after you answer my question, but set all that aside for a minute. Why doesn't Hensley tell us how, empower Officer Cuneo to detain Mr. Perez? Yes, Your Honor. So Hensley, it's important to look at the facts of Hensley. So we've mentioned that there was a bulletin board or something that was saying this person was wanted in connection with the burglary. And in that case, so it was a flyer. And in that case, it was different because it was truly investigative. There was no DNA or actual warrant. It was just, hey, we think this person was involved. Here's this flyer. It was sent around, neighboring police department saw it. So what happened was- It said they were involved in a murder. Correct. So a neighboring police officer who had seen that flyer was on patrol. And he saw this vehicle that he believed matched the description of this person that was involved in the crime. So he approached the vehicle. And as he approached the vehicle, he saw a gun. And at that point, everything changed because now he has a new probable cause. Independent of what the flyer was, he has this probable cause. Hey, I see this gun. So he has the right to detain and investigate. But in our case, Officer Cuneo, he made up his mind what he was going to do before he even went there. That's not what Hensley said. Hensley analyzed that he had the right to approach the car and pursue Hensley because of his knowledge of the existence of the wanted flyer. Correct. Very similar to what Cuneo thought he had the right to do because of the existence of a DNA warrant that he thought may have been an arrest warrant. But anyways, he thought he had the right to go talk to Perez. Correct, Your Honor. So under Hensley, the officer in Hensley had the right to go up to the car to investigate. But in this case, presumably, or based on what Officer Cuneo actually testified to, he was not going up to Perez to investigate. He was going up to Perez to arrest. Well, Hensley, they weren't going up to investigate either. They were going to go to the colleagues to where Hensley was for purposes of apprehending him and taking him back to Ohio. Correct. But I think the fact that the gun was present in the car, I think that changes everything. Because once the officer... He had to get there first. He had to get to the point where he was able to see the gun. Correct. And the court said, you know, the terrorist stop could be supported by the knowledge of the prior crime. Isn't that what we have here? Well, so, Your Honor, going back to Hensley, and I'll address the terrorist stop within this. So if you look at what the officer did in Hensley, he had this reasonable suspicion based on what another police department said. And we agree that he had the right to go up to the car. Why didn't Cuneo say that? So Cuneo, if it was truly about investigating, he could have walked up to Perez, but he did not have the right to say, I'm placing you under arrest. I'm taking you back to St. Mary's. They have a DNA warrant. That's not the seizure, right? In order for there to be an unlawful seizure, there has to be a seizure. And for this to have been a seizure, there had to be either physical force, which Cuneo did an exercise at that moment, or not show of authority, but submission to the show of authority. And there was no submission to the show of authority because Perez walked or jogged away. Right? Yes. So as I see it, the events that I've just described don't include a seizure yet. Respectfully, Your Honor, I would disagree. Okay, which point? So I would disagree that there was not a seizure when Officer Cuneo made that showing of authority. So the case law, and this is from the Torres case, and I think this was cited, if not in our brief, by the district court, but a seizure is defined as either physical force, as Your Honor mentioned, or a show of authority that restrains the liberty of a person. Assuming you're right. Let's assume you're right. But under Hensley, didn't he have the right to seize him? Are you asking, Your Honor, are you asking whether Cuneo in this case? Right. Okay. Didn't he have a right to seize him under Hensley? Your Honor, I would argue no, because the only basis that he was there, that his mistaken belief was to arrest Perez. But that was, he had no actual right to do that. The warrant was not valid at that point. And he had no independent reasonable suspicion based on what he observed. But based on what he was told, he reported for his shift. Weren't his actions objective and reasonable? No, Your Honor, I would argue no. And getting back to your first question with respect to Hensley, he would not have had the authority because Hensley only gives you, if you look at what the case says, it just says, it gives you time to briefly stop and investigate. Investigate, ask questions, specifically to check the ID, pose questions. Yeah, and if the court went further, and if it was, if Hensley was the Hensley that they were looking for in Cincinnati, the officers in Covington, Kentucky had the ability to arrest him. Correct, to take him into custody. So what's the difference between that and this? Because he, because, Your Honor, Officer Cuneo in this case, he had no, the warrant was never valid. The warrant was, it was never valid for him to exercise at that time. Was there a warrant in Hensley? No, Your Honor, there was no warrant. There was no warrant in Hensley, but again, Hensley. So how's an invalid warrant or a sub or DNA warrant put the police in a less privileged position and having no warrant at all? Because, Your Honor, so in Hensley, I think it's important to go back to that. The actual arrest did not occur until the gun was seen. So who knows what would have happened if that gun was not seen. There's a world where the perpetrator in that case does not even get arrested and it never becomes a case, whatever happens. But in this case, Cuneo did not have any other, he never intended to investigate. That's the whole thing. No, you're right. He intended to arrest. He thought the instruction from St. Mary's was hold him. And he took hold to mean arrest him, right? Correct, Your Honor. But the instruction to arrest, that's not explicit in Hensley. Hensley doesn't stand for that proposition that if somebody is suspected of a crime, you can automatically arrest them. Right. Well, in a weird way, I think that if Mr. Perez had submitted and had been arrested, you might have a stronger argument because there might not have been any right to actually take him into custody. Because you're right. Hensley says that when there's a fire about someone committing a crime in another jurisdiction, you have a right to detain that person. It doesn't say you have a right to bring him into custody. That's the crux of your argument, right? Correct. But that's a counterfactual because we'll never know what that case would look like because Mr. Perez fled. Correct. And I just want to be clear that... Isn't that the same thing we have here? Isn't that same kind of detention the same thing that we really have here? I mean, here, you know, the record shows Cuneo knew Perez. Everybody knew Perez. Perez was from Johnsonburg. He was a known individual. He ran into... He saw him at the store that he was going into and he had no gripe with Perez, but he knew that St. Mary wanted him for a DNA test. So he was going to call it arrest, detain, take him in, whatever. He was going to do what he thought he had the right to do. I'm going to take you... I'm going to take a big step forward. Having just said that, having just described what I think Cuneo did, uh, how could... Even if this was illegal because of the hours, even if it was illegal because he had no right to detain slash arrest, how was this kind of illegal arrest, trying to help a neighboring police department, that clearly establishes a violation of Fortinet? Which cases are you going to cite to us that said this is clearly established? Well, Your Honor, the reason... So the clearly established right is to not be free from unlawful searches and seizures and arrests. And the district court made clear that that right is fundamental to this country. And the fact that Officer Cuneo, as a police officer, he knows that in order to effectuate an arrest, you need to either have probable cause or a valid warrant. Sorry, can you repeat what you said the clearly established right is? So, Your Honor, yes. The clearly established right in this case is for individual citizens of this country to be free from unlawful searches and seizures. We ordinarily, in the qualified immunity context, define rights at such a high level of generality. Yes. Yes, Your Honor. In the district court opinion, Judge Lanzillo specifically mentioned that right as the clearly established right. And furthermore, he went further and explained it's also a fundamental right to not be served a warrant after hours. That's the more specific right, is that a police officer cannot serve a warrant. And keep in mind, Officer Cuneo in this case didn't even have the warrant. He wasn't, he never saw it. He was just going on what he thought it said. But in this case, that's a clear violation, it's our position, of Mr. Perez's Fourth Amendment rights. The important thing is you can say it and we can say it, but what case said it? Because that's what makes it clearly established. Your Honor, if I could point to you, I can grab the district court opinion and I can cite, I can pull right from there. I don't have it on my mind right now. Sure. That is the clearly established right, the one that you quoted or paraphrased. Didn't that raise qualified immunity in just about every encounter that police have with something that goes sideways? No, I don't think so. Because ultimately, it's, it comes down to the facts and what the facts say. So if there are facts where it's clear one way or the other, then the judge can use those facts to reason and come to an opinion. And Plumhoff v. Ricard and Mullenix v. Luna and all those cases say that you cannot just find the right at a high level of generality. You have to look at the specific facts of the case. Correct. So what specific facts in another case are like the specific facts of this case? So, Your Honor, I don't know if I can cite to a specific case on my mind right now, but I can cite to the case that the district court cited to. Yeah, what page of the opinion? So this is page 30 and then A33 of the appendix. Um, so Judge Lanzillo starts off by saying, as to Perez's illegal arrest claim, the right at issue is Perez's right not to be seized by the police without a warrant authorizing the seizure of the officer's observation of facts supporting probable cause to believe the person has committed a crime or at least reasonable suspicion to believe he or she is engaged in criminal activity. And then no citation. Well, he goes on to say this right is embodied in the text of the Fourth Amendment itself. And then this right has been recognized as applicable to the state since 1961 when the Supreme Court decided Mapp v. Ohio. So I understand for that portion, he may not cite to a specific case, but then going further when he talks about even if the right is defined more specifically as Perez's right to be free from seizure pursuant to a search warrant, executed outside of its specified limitations, that right has been clearly established since 1932 when the Supreme Court decided Sigro v. United States. There's a lot of water under the bridge since Sigro has been decided, including Malinix, including Plumhoff, Scott v. Harris, others. But I think I think we understand. Thank you. Thank you, Mr. Kelly. Ms. Vanderwood. Thank you, Your Honors. But I think that clarifies the issue as to whether or not there's an initial there's an unlawful seizure claim with respect to the initial interactions. That wasn't the case that was argued that has been briefed as clearly articulated in the complaint as it could have been. Putting that aside, I think we get to the crux of the issue with that last comment from the district court's opinion here, and that is the district court's belief. And we think mistaken belief under the law with respect to the what happened in the initial interaction and the district court's reasoning that the initial stop in the initial encounter was unlawful because there was no active criminal. Mr. Prez wasn't engaged in any active criminal conduct at that point. He wasn't, but that's not correct. Your point is you don't need it under Hensley. Yes. And the district court seemed to believe that you did. I mean, at the beginning of the oral argument on the summary judgment, you know, age 8.353 of the record. I mean, the district court opened the argument by saying at the outset, when Officer Cuneo first encounters Mr. Perez, can we agree that this detention at that point was a violation of the Fourth Amendment? And then the majority of the rest of the argument is a discussion as to why that is not the case under Hensley. And you cited Hensley to the district court. Correct. And that was mentioned in the argument. It was our brief was referenced in the argument where it was addressed, and it was addressed also specifically and independently at the oral argument itself. And we think that's the crux of the issue. And that's why we're here before this court on appeal, because according to the district court, we were denied summary judgment as to qualified immunity on that basis. And we do not believe that is that we believe that that was erroneous. And that should not be for the jury. Thank you for the argument in the briefing. We'll take the matter under advisement.